UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID M. LUCAS and LOUISE LUCAS, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | *   Civil Action No. 17-cv-11472-ADB |
| NEW PENN FINANCIAL, LLC, d/b/a | * |
| SHELLPOINT MORTGAGE SERVICING, | * |
| | * |
| Defendant. | * |
| | * |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiffs David and Louise Lucas bring claims for violations of the Real Estate Settlement Procedures Act ("RESPA") (Counts I through V), 12 U.S.C. §§ 2601 *et seq.*, 12 C.F.R. §§ 1024.35, 1024.41, the Fair Debt Collection Practices Act ("FDCPA") (Count VI), 15 U.S.C. § 1692 *et seq.*, Mass. Gen. Laws ch. 93A (Count VII), and intentional and/or negligent misrepresentation (Count VIII)[1] against Defendant New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"). [ECF No. 8 ("Compl.")]. Before the Court is Shellpoint's motion to dismiss Counts I, IV, V, and VI. [ECF No. 9]. For the reasons set forth herein, the motion is GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

The following facts are drawn from the Amended Complaint. The Court, as it must, takes the well-pleaded allegations as true in evaluating the motion to dismiss. See Ruivo v.

---

[1] The Amended Complaint mistakenly includes two Count VII's. The Court presumes that the second Count VII, the misrepresentation claim, was intended to be Count VIII. [ECF No. 8 at 24].

Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). Certain details are also culled from official public records and documents whose authenticity is not disputed. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (noting that although documents other than those attached to the complaint are, ordinarily, not considered when deciding a motion to dismiss, there are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint").

Plaintiffs are the former owners of a house in Peabody, Massachusetts. Compl. ¶¶ 1, 28. In July 2001, Plaintiffs executed a note that was secured by a mortgage on the property in favor of Citiwide Home Mortgage. Compl. ¶¶ 9–10. In 2013, David Lucas experienced serious health problems that led to economic distress and caused Plaintiffs to default on the loan. Compl. ¶ 12. Plaintiffs retained counsel to assist them in seeking a loan modification. In May 2016, their attorney, Brian Goodwin, filed a loss mitigation application with then-mortgage servicer Rushmore Loan Management Services ("Rushmore"), but received no response to that application. Compl. ¶¶ 11, 14, 17. On June 1, 2016, the mortgage loan servicer changed from Rushmore to Defendant Shellpoint. Compl. ¶ 15. After Shellpoint informed Plaintiffs that a new loss mitigation application was required, Attorney Goodwin submitted a second application to Shellpoint on December 12, 2016. Compl. ¶ 17. Shellpoint acknowledged receipt of the complete application via letter dated December 14, 2016. Compl. ¶ 74.

Even though Plaintiffs submitted their loss mitigation application through their attorney, Shellpoint continued to contact them directly, including through letters dated December 13, 14, and 16, 2016 and January 9, 2017 as well as numerous telephone calls. Compl. ¶¶ 20, 21. Plaintiffs did not receive a denial of their loss mitigation application, but were informed in

2

March 2017, by an unspecified person, that a foreclosure sale had been scheduled for their property. Compl. ¶¶ 24–25. Shortly thereafter, on March 24, 2017, Shellpoint informed Attorney Goodwin that Plaintiffs had been approved for a loan modification, that the modification paperwork would be sent shortly, and that the foreclosure sale would be postponed until completion of trial payments. Compl. ¶¶ 22, 25. Neither Plaintiffs nor their attorney ever received the modification paperwork, and Plaintiffs' attempts to discuss the situation with Shellpoint in late March and early April 2017 were unsuccessful. Compl. ¶¶ 26–27. Plaintiffs' house was sold at a foreclosure sale on April 12, 2017, and they were subsequently evicted. Compl. ¶¶ 28–29, 43.

Attorney Goodwin responded to the foreclosure sale by sending notices of error to Shellpoint on April 12 and May 26, 2017. Compl. ¶¶ 30, 32. Plaintiffs received a USPS return receipt showing that their April 12 notice of error had been delivered but did not otherwise receive a response to that notice. Compl. ¶¶ 30–31, Ex. B. Shellpoint sent a response to the May 26 notice of error in June 2017 attaching a purported January 11, 2017 letter denying Plaintiffs' loss mitigation application, but Plaintiffs had not previously received that denial. Compl. ¶¶ 35–36, Ex. D at 6–15. The January 11 letter asserted that Plaintiffs' "financial and other information indicates that although [Plaintiffs] may have a hardship, [Plaintiffs] do not qualify for a loan modification Trial Period Plan. [Plaintiffs] are however conditionally approved for the foreclosure alternatives described below." Compl. Ex. D at 6.

## II. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st

Cir. 2011).  While detailed factual allegations are not required, the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted).  The facts alleged, taken together, must "state a claim to relief that is plausible on its face."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570).  "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

When assessing the sufficiency of a complaint, the Court first "separate[s] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Maddox, 732 F.3d at 80 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Next, the Court "determine[s] whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id.  "[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"  Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," however, a claim may be dismissed.  Iqbal, 556 U.S. at 679.

## III. DISCUSSION

### A. Count I: RESPA Violation of 12 C.F.R. § 1024.41(b)

Plaintiffs claim that Shellpoint violated 12 C.F.R. § 1024.41(b) by failing to review their loss mitigation applications and bring a claim for that violation pursuant to 12 U.S.C. § 2605(f) ("Count I"), which allows individuals to recover "actual damages," plus statutory damages of up to $2,000 upon the showing of a pattern or practice of noncompliance. See 12 C.F.R. § 1024.41(a). A mortgage loan servicer who receives a loss mitigation application "45 days or more before a foreclosure sale" must "promptly . . . review the loss mitigation application to determine if the loss mitigation application is complete" and "[n]otify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays)" that it has received the application and determined either that the application is complete or incomplete. 12 C.F.R. § 1024.41(b)(2)(i).[2]

Here, the Complaint asserts that Plaintiffs sent Shellpoint their complete loss mitigation application on December 12, 2016, and that Shellpoint acknowledged receipt of the complete application in a letter dated December 14, 2016. Plaintiffs cannot maintain a claim that Shellpoint violated 12 C.F.R. § 1024.41(b) based on the December 12 application given that Shellpoint correctly acknowledged receipt of the complete loss mitigation application within the allowed five days.

---

[2] If the application is complete, within 30 days of receiving the application, the servicer must "[e]valuate the borrower for all loss mitigation options available" and provide "a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage." 12 C.F.R. § 1024.41(c)(1). Plaintiffs allege in Court II of their Amended Complaint that Shellpoint failed to evaluate all loss mitigation options under 12 C.F.R. § 1024.41(c). Shellpoint has not moved to dismiss Count II.

5

Although Count I refers only to "the Application," which is defined as the December 12, 2016 loss mitigation application, Plaintiffs argue that the motion to dismiss should be denied because they did not receive a response to the May 2016 application that they sent to then-servicer Rushmore. [ECF No. 15 at 4–5]. The applicable regulations require a transferee servicer (such as Shellpoint) to acknowledge receipt of a loss mitigation application within 10 days of the date servicing transferred if "the period to provide the notice required by paragraph (b)(2)(i)(B) of this section has not expired as of the transfer date *and* the transferor servicer has not provided such notice." 12 C.F.R. § 1024.41(k)(2)(i) (emphasis added). Servicing of Plaintiffs' loan was transferred to Shellpoint on June 1, 2016, and as a result, Shellpoint had an obligation to acknowledge receipt only if the application was received by Rushmore after May 24, 2016 (such that the 5 days excluding holidays and weekend days would have fallen on or after June 1, 2016) and Rushmore had not acknowledged receipt as of June 1, 2016. The Complaint does not make those assertions and therefore fails to state a claim that Shellpoint violated 12 C.F.R. § 1024.41(b).

Therefore, Count I will be dismissed with leave to amend.

### B. Counts IV and V: RESPA Violations of 12 C.F.R. § 1024.35

Plaintiffs claims that Shellpoint violated of 12 C.F.R. § 1024.35 through its failure to timely acknowledge receipt ("Count IV") and properly respond ("Count V") to Plaintiffs' April 12, 2017 notice of error. 12 C.F.R. § 1024.35 requires mortgage loan servicers to respond to qualified written requests for certain enumerated errors, including that a foreclosure sale was being conducted in violation of 12 C.F.R. § 1024.41(g), as alleged by Plaintiffs. A servicer who receives a notice of error "that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes

has occurred" must acknowledge receipt of the notice of error "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays)." 12 C.F.R. § 1024.35(a), (d). The servicer must then investigate the asserted error and either correct all identified errors, or if it concludes that there was no error, provide the borrower with:

> a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(B). Shellpoint was required to comply with the investigation and notification requirements "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays)" after receiving the notice at issue here. 12 C.F.R. § 1024.35(e)(3)(C).

Shellpoint argues that there is no private cause of action for a violation of 12 C.F.R. § 1024.35. The difficulty in determining whether a private cause of action exists for violations of 12 C.F.R. § 1024.35 results from the absence of any reference to a private cause of action in 12 C.F.R. § 1024.35, the explicit reference to the private cause of action under 12 U.S.C. § 2605(f) in 12 C.F.R. § 1024.41, and the scope of 12 U.S.C. § 2605(f), which provides borrowers a cause of action against "[w]however fails to comply with any provision of *this section*." 12 U.S.C. § 2605(f) (emphasis added). Not surprisingly, the the lack of regulatory clarity, courts disagree about whether such a private cause of action exists. Compare Lage v. Ocwen Loan Servicing LLC, 839 F.3d 1003, 1007 (11th Cir. 2016) ("If the servicer fails to respond adequately to the borrower's notice of error, then the borrower has a private right of action to sue the servicer under RESPA."), and Sutton v. CitiMortgage, Inc., 228 F. Supp. 3d 254, 271 (S.D.N.Y. 2017)

(assuming for the sake of the motion at issue that a private right of action under 12 C.F.R. § 1024.35 exists), and Guccione v. JPMorgan Chase Bank, N.A., No. 3:14-CV-04587 LB, 2015 WL 1968114, at *11 (N.D. Cal. May 1, 2015) ("12 C.F.R. § 1024.35 is enforceable under 12 U.S.C. § 2605(f)"), with Watts v. Mortg. Bridge Sols., LLC, No. 16-10552, 2016 WL 8188768, at *6 (E.D. Mich. Dec. 7, 2016) ("Under Regulation X, a borrower is only permitted a private cause of action for a violation under § 1024.41, which specifically provides that '[a] borrower may enforce the provisions of this section....'"), adopted by, No. 16-CV-10552-DT, 2017 WL 438745 (E.D. Mich. Feb. 1, 2017), and Miller v. HSBC Bank U.S.A., N.A., No. 13 CIV. 7500, 2015 WL 585589, at *11 (S.D.N.Y. Feb. 11, 2015) (holding that § 1024.35 "does not provide a private right of action"), and Willson v. Bank of Am., N.A., No. 15-14303-CV, 2016 WL 8793204, at *8 (S.D. Fla. May 2, 2016) (noting same).

The Court concludes that 12 U.S.C. § 2605(f) provides a private cause of action for violations of 12 C.F.R. § 1024.35 for two reasons. First, the Consumer Financial Protection Bureau ("CFPB") promulgated 12 C.F.R. § 1024.35 under 12 U.S.C. § 2605(k)(1)(E) and (j)(3), which provide that the CFPB "shall establish any requirements necessary to carry out" 12 U.S.C. § 2605 and that a servicer shall not "fail to comply with any . . . obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(j)(3), (k)(1)(E); 78 Fed. Reg. at 10724. Because 12 U.S.C. § 2605(k)(1)(E) covers violations of 12 C.F.R. § 1024.35, a violation of section 1024.35 is actionable under 12 U.S.C. § 2605(f). Second, although 12 C.F.R. § 1024.35 does not specifically reference the private cause of action, the CFPB has noted "that regulations established pursuant to [12

U.S.C. § 2605] are subject to [12 U.S.C. § 2605(f)], which provides borrowers a private right of action to enforce such regulations." 78 Fed. Reg. at 10714 n.64.[3]

Therefore, the motion to dismiss is denied as to Counts IV and V.

### C. Count VI: FDCPA Violations

Plaintiffs next claim that Shellpoint violated the FDCPA by (1) engaging in direct, harassing communication with Plaintiffs despite knowing that they were represented by an attorney, and (2) by using false, deceptive, or misleading methods, unfair or unconscionable means, and conduct that had the natural consequence of harassing, oppressing, or abusing Plaintiffs, including through representations made to Attorney Goodwin in connection with Plaintiffs' loss mitigation application and the ensuing foreclosure sale in violation of 15 U.S.C. §§ 1692d, 1692e, and 1692f.  Compl. ¶¶ 19–21, 29–42.

#### 1. Direct Communications with Plaintiffs

Shellpoint contacted Plaintiffs directly through letters dated December 13, 14, and 16, 2016 and January 9, 2017 and numerous telephone calls.  The only details asserted in the Amended Complaint about the content of those communications are that the December 16 letter noted that numerous telephone calls had been placed directly to Plaintiffs and that the January 9 letter stated that there was a delay in the review of Plaintiffs' loss mitigation application.  Compl. ¶ 20.

---

[3] In reaching this conclusion, the Court is cognizant of the rules of regulatory construction.  See Morales v. Sociedad Espanola de Auxilio Mutuo y Beneficencia, 524 F.3d 54, 59 (1st Cir. 2008).  The Court cannot, however, restrict the scope of the cause of action Congress provided in 12 U.S.C. § 2605(f) based on superfluity in the CFPB's regulation, particularly given that doing so would be inconsistent with the CFPB's understanding of that regulation.  See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

The FDCPA prohibits debt collectors from communicating:

> with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

15 U.S.C. § 1692c(a)(2). "The FDCPA imposes strict liability on debt collectors for their violations." Harrington v. CACV of Colo., LLC, 508 F. Supp. 2d 128, 132 (D. Mass. 2007) (citing Picht v. Jon R. Hawks, Ltd., 236 F.3d 446, 451 (8th Cir. 2001); Foti v. NCO Fin. Sys., 424 F.Supp.2d 643, 661 (S.D.N.Y. 2006); Pettway v. Harmon Law Offices, P.C., 2005 WL 2365331 (D. Mass. 2005)). While "[d]efendants may, as an affirmative defense, claim that their violations were unintentional," they then must meet the burden of showing that the violation was not intentional. Harrington, 508 F. Supp. 2d at 132 (citing 15 U.S.C. § 1692k(c)).

Shellpoint argues that its direct communications with Plaintiffs did not violate the FDCPA because those communications were connected to Plaintiffs' loss mitigation application and not the collection of Plaintiffs' debt. [ECF No. 10 at 9–10]. Communications that address a borrower's loss mitigation application and do not demand payment may, under some circumstances, not be connected to the collection of a debt. See 15 U.S.C. §§ 1692d, 1692e, 1692f; see also Marshall v. Deutsche Bank Nat'l Tr. Co., No. 4:10CV00754-BRW, 2011 WL 345988, at *3 (E.D. Ark. Feb. 1, 2011), (concluding that letters regarding a loan modification were attempts to restructure the debt, not a demand for payment, and could not therefore support an FDCPA violation), aff'd, 445 F. App'x 900 (8th Cir. 2011). Some communications that do not demand payment may, however, relate to the collection of a debt if the communications refer to another communication that demanded payment or where the servicer seeks financial information for the purpose of settling the debt. Compare Gburek v. Litton Loan Servicing LP,

614 F.3d 380, 386 (7th Cir. 2010) (requests for borrower to contact lender's agent to discuss settlement options was a communication in connection with the collection of a debt), with Farquharson v. Citibank, N.A., 664 F. App'x 793, 800–801 (11th Cir. 2016) (holding that a letter outlining the plaintiffs' ability to opt into a trial loan modification program was not related to debt collection), and Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011) (holding that communications that merely stated an account balance in response to a borrower inquiry and did not threaten consequences for noncompliance did not come within the FDCPA because no jury could reasonably find "an animating purpose . . . to induce payment").

Here, the Complaint does not allege that any of the direct calls or letters from Shellpoint to Plaintiffs demanded payment, referenced other communications demanding payment, or demanded financial information for the purpose of settling the debt.[4] Therefore, as presently pled, the communications directly between Shellpoint and Plaintiffs are insufficient to state a violation of the FDCPA under Section 1692c.

### 2. Foreclosure-Related Communications with Attorney Goodwin

Plaintiffs allege that Defendants violated three other sections of the FDCPA. Section 1692d prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt,"

---

[4] Although the Complaint does not clearly identify any communications that would show a violation of the FDCPA, the record suggests that such communications may exist. The January 11, 2017 denial of Plaintiffs' loss mitigation application, which Shellpoint claims it sent and which Plaintiffs assert they never received, was addressed directly to Plaintiffs and demanded immediate payment of $106,276.91 to avoid foreclosure. Compl. Ex. D at 6. Additionally, Shellpoint wrote to Attorney Goodwin on June 9, 2017 and claimed, "On February 21, 2017, Shellpoint spoke with the homeowner regarding the offer who in turn advised it was not beneficial and that Shellpoint should contact his representative. Our records indicate that the homeowner also advised that he would not be able to contribute any up-front funds/payment." Compl. Ex. D at 3.

section 1692e prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt," and section 1962f prohibits "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692d, 1692e, 1692f. Plaintiffs allege that Shellpoint violated these provisions of the FDCPA by telling Attorney Goodwin that Plaintiffs had been approved for a loan modification and that the foreclosure sale would be stayed pending completion of trial payment plan documents. Compl. ¶ 25.

Shellpoint first argues that its foreclosure-related communications with Attorney Goodwin do not support an FDCPA claim because foreclosure is not debt collection and Shellpoint did not hold Plaintiffs' mortgage or foreclose on the property. [ECF No. 10 at 10–12]. Courts are divided over whether foreclosure constitutes debt collection and the First Circuit has not addressed the issue.[5] This Court agrees with the Sixth Circuit's logic that "every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt" and concludes that where a debt collector makes false, deceptive, or misleading representations to a borrower's attorney in connection with a foreclosure, that conduct violates the FDCPA. Glazer, 704 F.3d at 461; see also 15 U.S.C. 1692e.

---

[5] Compare Kaymark v. Bank of Am., N.A., 783 F.3d 168, 179 (3d Cir. 2015) ("Nowhere does the FDCPA exclude foreclosure actions from its reach. On the contrary, foreclosure meets the broad definition of "debt collection" under the FDCPA"), and Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 461 (6th Cir. 2013) ("Foreclosure's legal nature, therefore, does not prevent it from being debt collection."), and Windham v. Harmon Law Offices, P.C., No. 15-12809-FDS, 2016 WL 94248, at *2 (D. Mass. Jan. 7, 2016) (assuming without deciding that FDCPA applies to actions related to foreclosure proceedings), with Harry v. Countrywide Home Loans Inc., 215 F. Supp. 3d 183, 187 (D. Mass. 2016) ("The FDCPA covers debt collection which is distinct from the enforcement of a security interest at issue in this case." (citing Speleos v. BAC Home Loans Servicing, L.P., 824 F. Supp. 2d 226, 233 (D. Mass. 2011))), aff'd on other grounds, 902 F.3d 16 (1st Cir. 2018), and Beadle v. Haughey, No. CIV.04-272-SM, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005) ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA.").

Shellpoint is correct, however, that the Plaintiffs have not pled a violation of sections 1692d or 1692f based on the communications with Attorney Goodwin.  The communications were not a violation of section 1692d because they did not have a "natural consequence" "to harass, oppress, or abuse any person" given that Plaintiffs were likely to be pleased by the purported approval of their loss mitigation application, and they did not violate section 1692f because the communications were not a "unfair or unconscionable means to collect or attempt to collect any debt."  See 15 U.S.C. §§ 1692d, 1692f (prohibiting conduct constituting harassment or abuse, including threats of violence, use of obscene or profane language, and publication of lists of consumers who refuse to pay debts, and prohibiting the use of "unfair or unconscionable means to collect or attempt to collect any debt").

With regards to 15 U.S.C. §§ 1692e, although Shellpoint did not itself foreclose on the real property at issue, see [ECF No. 10-2], it made misleading representations about the timing of the ensuing foreclosure sale that led Plaintiffs to believe that they could agree to a loan modification and that that would prevent the foreclosure.  Compl. ¶¶ 22–25.  Although those representations were motivated primarily by a desire to modify the debt rather than to collect it, they were nonetheless misleading and made "in connection with the collection of" a debt given that Shellpoint inaccurately represented that, by agreeing to the modification, Plaintiffs could delay the impending foreclosure sale.  Plaintiffs have therefore made out a plausible violation of 15 U.S.C. § 1692e.

Shellpoint argues that the communications with Attorney Goodwin are not actionable under the FDCPA in any event.  [ECF No. 10 at 14].  Although different standards may apply to alleged FDCPA violations that stem from communications with an attorney, courts generally agree that communications with an attorney that are effectively "indirect communications" with

a consumer are actionable.[6] Here, Shellpoint told Attorney Goodwin that it had approved Plaintiffs' loss mitigation application, which led to the natural conclusion that Plaintiffs would be able to stave off or avoid foreclosure. Upon receiving that information, any attorney would have relayed the good news to his or her client, particularly where Plaintiffs were being threatened with imminent foreclosure. Shellpoint is not insulated from the consequences of an FDCPA violation by virtue of the fact that it made false and misleading representations to Plaintiffs' attorney rather than to Plaintiffs themselves.

Because Plaintiffs plausibly assert a violation of 15 U.S.C. § 1692e, Shellpoint's motion to dismiss Claim VI is denied.

## IV. CONCLUSION

Accordingly, the motion is <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>. Count I is dismissed. The motion to dismiss is denied as to Counts IV and V. Count VI is dismissed to the extent it is based on sections of the FDCPA other than 15 U.S.C. 1692e. Plaintiffs are granted leave to amend their complaint within 21 days if they are so inclined.

**SO ORDERED.**

January 31, 2019                                /s/ Allison D. Burroughs
                                                ALLISON D. BURROUGHS
                                                U.S. DISTRICT JUDGE

---

[6] See Bishop v. Ross Earle & Bonan, P.A., 817 F.3d 1268, 1272 (11th Cir. 2016) ("We join the Third, Fourth, and Seventh Circuits in holding that a debt-collection notice sent to a consumer's attorney is . . . an 'indirect' communication" with the consumer); Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 (3d Cir. 2011); Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 773–75 (7th Cir. 2007); Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 232–33 (4th Cir. 2007). But see Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 934 (9th Cir. 2007) ("[C]ommunications directed solely to a debtor's attorney are not actionable under the Act."); Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002) ("Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior.").